# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| DAVID CRIMMINS, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> UNITED STATES OF AMERICA, ) <br> ) <br> Defendant. ) <br> _____) | No. 2:17-cv-3470-DCN <br><br> **ORDER** |

The following matter is before the court on defendant United States of America's ("the government") motion in limine, ECF No. 46. For the reasons set forth below, the court denies the motion.

## I. BACKGROUND

The facts of this case are straight forward. On January 16, 2016, plaintiff David Crimmins's ("Crimmins") Toyota Pickup was hit by a U.S. Postal Service mail-delivery truck on Ben Sawyer Boulevard. Crimmins sustained injuries to his spine and filed a negligence action against the government as a result.

Crimmins filed his complaint on December 22, 2017, and the case is set for a bench trial to begin on Monday, August 26, 2019. On July 19, 2019, the government filed a motion in limine seeking an order prohibiting Dr. Jason Highsmith ("Dr. Highsmith"), Lindsay Moore ("Moore"), and Tricia Yount ("Yount") from testifying at trial about Crimmins's alleged permanent medical impairments, future medical treatment recommendations, and costs associated with any recommended future medical treatments. According to Crimmins, Dr. Highsmith is his treating neurosurgeon who will

provide his opinion on Crimmins's future medical treatment recommendations.[1] Moore is a retained expert hired to testify about Crimmins's future medical costs and expenses, and Yount is a retained expert hired to testify about the present-day economic value of Moore's findings. Crimmins filed a response on August 2, 2019, ECF No. 50, and the government replied on August 5, 2019, ECF No. 53. The court held a hearing on the motion on August 8, 2019.

## II. DISCUSSION

The government initially sought to exclude the testimony of Dr. Highsmith, Moore, and Yount based on the alleged late disclosure of Dr. Highsmith's expert report; however, at the hearing on the motion, the government clarified that it is only seeking to exclude the testimony of Dr. Highsmith. The government explains that Crimmins's expert reports were due by February 25, 2019, and that Crimmins sent Dr. Highsmith's "report"[2] to the government for the first time on July 10, 2019. The government contends that "[w]ithout hesitation, the United States represents to the Court that the lack of depositions and naming of experts is directly tied to having never received this document [the report]," ECF No. 46 at 4, and that it is both surprised and prejudiced by the late disclosure of Dr. Highsmith's opinions. The government alternatively requests that the court reopen discovery for both liability and damages and to permit the government to name experts.[3]

---

[1] As discussed in much greater detail below, the government argues that Dr. Highsmith is an expert retained for the purpose of litigation.

[2] Crimmins disputes the characterization of this document as a report; however, for ease of reference, the court will refer to the document as a report.

[3] The government failed to name any experts by its April 26, 2019 deadline. The government filed a motion to extend discovery so that it could name experts, ECF No. 34,

2

In response, Crimmins argues that: (1) Dr. Highsmith is not a expert specifically obtained for purposes of litigation but instead is a treating physician who is not required to submit an expert report; (2) the "report" that Crimmins sent to the government is actually correspondence that Dr. Highsmith sent to Moore for Moore to use while creating her expert report, which is a Life Care Plan, and Crimmins recently sent the document to the government solely as a courtesy and to encourage settlement; (3) the government already had Dr. Highsmith's future medical treatment opinions because they were produced medical records in December 2018 and again in January 2019 in Moore's Life Care Plan, so there is no surprise or prejudice; and (4) Crimmins's counsel told the government multiple times that Dr. Highsmith would not be producing an expert report because Dr. Highsmith was not a retained expert. Crimmins also notes that he offered the government the opportunity to depose Dr. Highsmith prior to trial, and that Dr. Highsmith does not plan to testify about any cost estimates that are contained in his report. Additionally, Crimmins argues that the government did not conduct any meaningful discovery in this case, as it conducted no depositions and served only one set of interrogatories and requests for production, and that "[t]he real purpose" of this motion in limine is for the government "to re-argue its failed motion to extend the scheduling order so that it can designate expert witnesses." ECF No. 50 at 3.

There are two issues here that the court must address. The first is whether Dr. Highsmith is a treating physician or an expert specifically retained for the purposes of litigation. The second is whether the late disclosure of the evidence contained in the

---

which was opposed by Crimmins, ECF No. 39. The court denied the government's motion. ECF No. 42.

report may be excused. The court finds that Dr. Highsmith is a treating physician who was not required to produce an expert report, and that the report's late disclosure is excused.

**A. Whether Dr. Highsmith is a Treating Physician**

With regard to expert reports, Rule 26 of the Federal Rules of Civil Procedure provides:

> (B) Witnesses Who Must Provide a Written Report. Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report--prepared and signed by the witness--<u>if the witness is one retained or specially employed to provide expert testimony in the case</u> or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain:
>
>> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
>> (ii) the facts or data considered by the witness in forming them;
>> (iii) any exhibits that will be used to summarize or support them;
>> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
>> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
>> (vi) a statement of the compensation to be paid for the study and testimony in the case.
>
> (C) Witnesses Who Do Not Provide a Written Report. Unless otherwise stipulated or ordered by the court, if the witness is not required to provide a written report, this disclosure must state:
>
>> (i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and
>> (ii) a summary of the facts and opinions to which the witness is expected to testify.

Fed. R. Civ. P. 26(a)(2)(B)–(C) (emphasis added). Treating physicians generally do not have to comply with the requirements of Rule 26(a)(2)(B), meaning they do not have to provide an expert report. See, e.g., Perkins v. United States, 626 F. Supp. 2d 587, 590 (E.D. Va. 2009) ("In general, a treating physician is not a specially retained expert.").

4

"[T]reating physicians commonly consider the cause of any medical condition presented in a patient, the diagnosis, the prognosis and the extent of disability, if any, caused by the condition or injury. Opinions as to these matters are encompassed in the ordinary care of a patient and do not subject the treating physician to the report requirement of Rule 26(a)(2)(B)." Sullivan v. Glock, Inc., 175 F.R.D. 497, 500 (D. Md. 1997) (quoting Shapardon v. West Beach Estates, 172 F.R.D. 415, 416–417 (D. Haw. 1997)); see also Hall v. Sykes, 164 F.R.D. 46, 48 (E.D. Va. 1995) ("If a treating physician forms an opinion of the causation of an injury to a patient and the prognosis of the patient's condition during the treatment then such opinion may be expressed by the treating physician without the necessity of a report under Fed. R. Civ. P. 26(a)(2)(B).").

The government argues that Dr. Highsmith is a retained expert who must provide a report pursuant to Fed. R. Civ. P. 26(a)(2)(B) because Dr. Highsmith was hired to examine Crimmins for the purpose of litigation. The government first cites to Crimmins's expert witness designations, filed on August 20, 2018 and October 17, 2018, which both state that "[i]n addition to being a treating physician, and out of an abundance of caution, Dr. Highsmith has been retained as an expert witness by Plaintiff." ECF Nos. 25 at 3; 28 at 3. In addition, the government points to the fact that Crimmins's counsel, Joye Law Firm, drafted a check on July 31, 2018 to Dr. Highsmith. ECF No. 53-1. In addition, Dr. Highsmith performed a "medical record review" of Crimmins's medical records on August 9, 2018, ECF No. 53-2, and an "independent medical examination" of Crimmins on September 4, 2018, ECF No. 50-1. This appears to be the first time Dr. Highsmith examined Crimmins. The government also notes that Dr. Highsmith only reviewed Crimmins's medical records beginning on the date of the January 16, 2016

motor accident, which suggests that he was retained to provide a medical opinion for this case. The government contends that if Dr. Highsmith did eventually become Crimmins's treating physician, it was only after Dr. Highsmith was retained by Joye Law Firm to provide services necessary for this litigation.

Crimmins argues that Dr. Highsmith is Crimmins's treating physician and is therefore not required to submit an expert report because Dr. Highsmith was not specifically retained for litigation purposes. At the hearing on the motion, Crimmins's counsel explained that during the course of litigation, Crimmins was looking for a new doctor, and that Dr. Highsmith first required Joye Law Firm to pay a fee for an independent medical exam before Dr. Highsmith would treat Crimmins due to Crimmins's involvement in ongoing litigation. Crimmins's counsel also explained that he did not ask Dr. Highsmith to conduct an independent medical record review and that Dr. Highsmith conducted the review without prompting. Crimmins's counsel then stated that since the independent medical examination, Crimmins has continued to see Dr. Highsmith, and that Joye Law Firm has not paid for that treatment. Moreover, Crimmins explained that he has told the government several times that Dr. Highsmith is a treating physician and would not be producing an expert report, including in a March 25, 2019 email in which he stated that there would be no expert reports from Dr. Highsmith because "Dr. Highsmith is plaintiff's treating neurosurgeon and is not a retained expert within the meaning of FRCP 26(a)(2)(B)." ECF No. 50-5 at 1.

The court finds that Dr. Highsmith is a treating physician who is not required to produce an expert report. Crimmins's counsel's explanation as to why Joye Law Firm paid Dr. Highsmith and why Dr. Highsmith conducted an independent medical exam and

record review convinces the court that Dr. Highsmith was not specifically retained for the purposes of litigation. In addition, Crimmins has consistently referred to Dr. Highsmith as his treating physician and communicated that point to the government. Moreover, despite the government's argument to the contrary, Dr. Highsmith's opinions about Crimmins's future medical treatment do fall within the scope of a treating physician's permissible testimony absent an expert report. See Sullivan, 175 F.R.D. at 500. Therefore, Dr. Highsmith is permitted to testify at trial about his recommendations regarding Crimmins's future medical treatment as well as other topics that are within the scope of a treating physician's testimony.[4]

### B. Whether Late Disclosure May Be Excused

The next question is whether the late disclosure of Dr. Highsmith's opinions may be excused. The government argues that the late disclosure cannot be excused because Crimmins's failure to disclose Dr. Highsmith's report resulted in the government's inability to conduct meaningful discovery, and because the government did not know the extent of Dr. Highsmith's opinions until it received the report shortly before trial. Crimmins argues that the government should not be surprised by the information in the report because the information was contained in medical reports that were produced in December 2018 and in the Life Care Plan produced to the government on January 31, 2019. Moreover, Crimmins has offered the government the opportunity to depose Dr. Highsmith to cure any prejudice. Crimmins also argues that the reason why the report

---

[4] The court acknowledges that Dr. Highsmith's report contains cost estimates for each of his recommendation. Based on representations made by Crimmins's counsel at the hearing, it is the court's understanding that Dr. Highsmith will not be testifying about the costs associated with his recommendations. Should Dr. Highsmith attempt to testify about these costs, the government may object at trial.

7

was not disclosed was because the government failed to subpoena Dr. Highsmith's and Moore's files, which is where the report was contained.

As discussed above, the court finds that Dr. Highsmith is a treating physician who is a witness pursuant to Rule 26(a)(2)(C). That rule mandates that when a witness is not required to provide a written report, the party must still provide a disclosure that states the subject matter on which the witness will present evidence and a summary of the facts and opinions to which the witness will testify. Fed. R. Civ. P. 26(a)(2(C). Pursuant to Rule 37 of the Federal Rules of Civil Procedure, if a party fails to provide a Rule 26(a) disclosure, then the party is not allowed to use that witness at trial unless the failure to disclose was substantially justified or is harmless. Fed. R. Civ. P. 37(c)(1). Courts have broad discretion in deciding whether the failure was substantially justified or is harmless. Wilkins v. Montgomery, 751 F.3d 214, 222 (4th Cir. 2014). In doing so, the court should consider: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." Southern States Rack and Fixture, Inc. v. Sherwin-Williams Co., 318 F.3d 592, 597 (4th Cir. 2003) ("the Southern States factors").

Crimmins did identify Dr. Highsmith as a witness in both September and October of 2018. ECF Nos. 25 and 28. However, the facts and opinions to which he will testify are not included in those disclosures; therefore, the court must apply the Southern States factors to determine if the late disclosure of his opinions can be excused.

### a. Surprise

The government argues that Dr. Highsmith's opinions were a surprise because the government did not know what Dr. Highsmith's opinions would be nor did it know to what extent Dr. Highsmith would opine as to Crimmins's impairment, future medical care and the projected costs. Crimmins argues that everything in Dr. Highsmith's report was contained in medical reports he produced and the Life Care Plan created by Moore, and that Dr. Highsmith will not testify about the projected costs contained in the document.

The Life Care Plan that was produced to the government on January 31, 2019, ECF No. 50-2, does generally incorporate Dr. Highsmith's recommendations. Each item that Dr. Highsmith recommended appears in the "Medical Cost Projection" on pages 8–10. At the hearing on the motion, the government took issue with the fact that the degree to which Dr. Highsmith made each recommendation varies, while the Life Care Plan simply includes each recommendation. For example, in his report, Dr. Highsmith opined that Crimmins will <u>require</u> annual visits with a neurosurgeon and an MRI of his lumbar spine every three years, as opposed to Dr. Highsmith's opinion that Crimmins "<u>will likely</u>" need lumbar epidural steroid injections and chronic medication management. ECF No. 46-1 at 1 (emphasis added). The Life Care Plan includes each of Dr. Highsmith's recommendation without an indication of the recommendation's degree of necessity. The government also argued that there is information in Dr. Highsmith's report that is not contained in the Life Care Plan. For example, the government pointed to the fact that Dr. Highsmith's report opines that Crimmins "sustained 13% permanent

impairment of whole person[,]" ECF No. 46-1 at 1, while the Life Care Plan contains no mention of this opinion.

While the court acknowledges that these distinctions do exist, the specific evidence from Dr. Highsmith's report that is not contained in the Life Care Plan is not so surprising as to warrant exclusion of this evidence. With regard to the degree of a recommended medical treatment's necessity, this information is something that the government could easily address on cross examination. As for the percentage of permanent impairment, Crimmins's counsel represented that Crimmins will generally testify about his impairments at trial but that counsel will not elicit testimony from Dr. Highsmith about his opinion on Crimmins's percentage of impairment. Clearly, both the majority and the crucial aspects of Dr. Highsmith's report appear in the Life Care Plan, meaning that any surprise experienced by the government is minimal.

### b. Ability to Cure Surprise

The government argues that it cannot cure this surprise because Crimmins's failure to produce Dr. Highsmith's report impeded the government's ability to conduct discovery and name experts. Crimmins has offered the government the opportunity to depose Dr. Highsmith prior to trial. The government has not yet deposed Dr. Highsmith and argues that the prejudice of the late production cannot be cured solely by deposing Dr. Highsmith. Instead, the government contends that it should be permitted to depose Dr. Highsmith and to identify an expert or experts to respond to his testimony. The court finds the government's argument to be unconvincing. As discussion above, most of the information contained in Dr. Highsmith's report had previously been produced, and

deposing Dr. Highsmith would sufficiently cure any surprise related to the degree of necessity of future medical treatments and Crimmins's permanent impairment.

Moreover, the court is skeptical of the government's argument that its lack of access to Dr. Highsmith's report impeded the government's ability to conduct discovery and name experts. The Life Care Plan contains the recommendations in Dr. Highsmith's report and states that "[i]n preparing this medical cost projection, consultation was obtained with Mr. Crimmins treating providing, Dr. Jason Highsmith. Dr. Highsmith has outlined the future medical needs Mr. Crimmins will require, to a reasonable degree of medical certainty, as a result of his injuries." ECF No. 50-2 at 7. The Life Care Plan was produced on January 31, 2019. Therefore, the government was aware that Dr. Highsmith was the source of these recommendations at the end of January. Discovery in this case ended on May 26, 2019. Had the government wanted more information on these recommendations, it could have deposed Moore or Dr. Highsmith between February and May.

### c. Disruption at Trial

The court finds that the introduction of this evidence would not disrupt trial. As discussed above, the information in the report was incorporated into the Life Care Plan, which was timely produced. Moreover, trial is still several weeks away, and counsel still has time to account for this evidence in its trial strategy. Therefore, this factor weighs in favor of permitting the evidence at trial.

### d. Importance of the Evidence

This evidence is quite important, as it establishes the foundation of Moore's predictions for the cost of Crimmins's future medical care. This is a crucial aspect of the

damages that Crimmins seeks. Indeed, Crimmins's potential recovery would be severely decreased if this evidence were to be excluded. This weighs in favor of excusing the late disclosure.

### e. Explanation for Failure to Disclose

Crimmins first argues that the report was not disclosed because the government failed to subpoena Dr. Highsmith's and Moore's files. Crimmins then goes on to argue that if Crimmins's counsel's office had the report and it was not produced, it was due to inadvertence, mistake, and/or neglect. However, Crimmins explains that Crimmins's counsel produced the report to the government as soon as Moore sent it to Crimmins's counsel. See ECF No. 50-4.

The court does not place blame for the failure to disclose on the government's failure to subpoena Dr. Highsmith's and Moore's files, as it was Crimmins's responsibility to produce the document. Crimmins's counsel's explanation of inadvertence, mistake, and/or neglect is not a particularly convincing explanation for why the report was not disclosed; however, based on the other Southern States factors, the court finds that the late disclosure is excused, and that evidence about Crimmins's future medical treatment recommendations is admissible.

As mentioned at the hearing, the court encourages the parties to consider a second mediation prior to trial. This is not a mandate but simply a suggestion that leans in the direction of an urging. Of course, the ultimate decision to participate in a second mediation is for the parties, guided by the advice of counsel. Should the parties choose to follow this route, they may utilize any mediator they agree upon, or if the assistance of Magistrate Judge Baker is desired, the court will ask her office to reach out to coordinate

scheduling. Any mediation must be completed before the trial date of August 26, 2019.

The ADR Program Director, Danny Mullis, is available to assist you if needed.

### III. CONCLUSION

For the reasons set forth above, the court **DENIES** the motion.

**AND IT IS SO ORDERED.**

           **DAVID C. NORTON**
           **UNITED STATES DISTRICT JUDGE**

**August 9, 2019**
**Charleston, South Carolina**